# United States Court of Appeals for the Federal Circuit

---

**CAUSAM ENTERPRISES, INC.,**
*Appellant*

**v.**

**ECOBEE TECHNOLOGIES ULC,**
*Appellee*

---

2024-1958

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2022-01339.

---

Decided: October 15, 2025

---

WAYNE MICHAEL HELGE, Bunsow De Mory LLP, Alexandria, VA, argued for appellant. Also represented by JAMES THOMAS WILSON.

JUSTIN J. OLIVER, Venable LLP, Washington, DC, argued for appellee. Also represented by MANNY CAIXEIRO, Los Angeles, CA; STEVEN M. LUBEZNY, Law Office of Edward H Rice, LLC, Northbrook, IL.

---

Before TARANTO, CHEN, and STOLL, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Causam Enterprises, Inc. is the recorded owner of U.S. Patent No. 10,394,268, titled "Method and Apparatus for Actively Managing Consumption of Electric Power over an Electric Power Grid," which contains nineteen claims. ecobee Technologies ULC successfully petitioned the United States Patent and Trademark Office (PTO) to institute an inter partes review (IPR), under 35 U.S.C. §§ 311–19, of all claims but claim 12 of the patent, alleging obviousness. The PTO's Patent Trial and Appeal Board (Board) held each challenged claim unpatentable for obviousness under 35 U.S.C. § 103. Final Written Decision, *ecobee Technologies ULC v. Causam Enterprises, Inc.*, IPR2022-01339 (P.T.A.B. Mar. 19, 2024); J.A. 1–78.

Causam now appeals the Board's decision. Causam first challenges the Board's failure to decide whether Causam owns the '268 patent (which Causam insists it does) after ecobee, though not challenging Causam's ownership in this IPR, challenged Causam's ownership in a proceeding before the International Trade Commission (ITC) involving the '268 patent. (The result of the ITC proceeding is before us in *Causam Enterprises, Inc. v. International Trade Commission*, No. 23-1769 (*Causam v. ITC*), decided today. ––– F.4th ––– (Fed. Cir. 2025).) Causam's argument is that the Board thereby denied due process to whoever ecobee (but not Causam) suggests is the true owner. Causam also presents one argument of error on the merits of the unpatentability ruling, contending that the Board incorrectly construed a claim limitation common to all challenged claims. We first hold that Causam has constitutional standing to bring this appeal. We then hold that the Board committed no reversible error on either of the two grounds raised by Causam. Accordingly, we affirm.

# I

The '268 patent addresses techniques for "actively controlling [electric] power load management for individual

customers" and related tasks, such as "tracking power savings." '268 patent, col. 1, lines 26–32. In particular, it describes "demand response load management programs." *Id.*, col. 1, line 44; *id.* at lines 43–55. In a description not challenged here, "demand response" refers to the adjustment of electricity consumption (demand) in response to changes in electricity prices or to incentive payments for power reduction (offered to customers by the power supplier because, *e.g.*, its costs are high or system reliability is jeopardized). J.A. 699 n.3. One type of demand response functionality, and the focus of the '268 patent, involves action by the power supplier (utility) itself—shutting off customers' appliances during periods of peak electricity use. '268 patent, col. 1, lines 43–55; *see id.* at col. 6, lines 48–65.

Claim 1 of the '268 patent is representative for present purposes:

> 1. A method for managing an electric power flow within an electric power grid, comprising:
>
> [1a] a client device receiving a power control message from a load management server, the power control message indicating at least one of an amount of electric power to be reduced and an identification of at least one controllable device to be instructed to disable the electric power flow to at least one associated power consuming device;
>
> [1b] the client device issuing a power management command to the at least one controllable device, the power management command causing the at least one controllable device to disable the electric power flow to the at least one associated power consuming device to provide a reduction in consumed power; and
>
> [1c] **generating measurement and verification data corresponding to the reduction in consumed power**.

*Id.*, col. 22, line 56 through col. 23, line 5 (emphasis added). Primarily at issue is the highlighted language, "generating measurement and verification data *corresponding to* the reduction in consumed power." *Id.*, col. 23, lines 4–5 (emphasis added).

In July 2022, ecobee filed a petition for IPR, challenging claims 1–11 and 13–19 of the '268 patent as claiming methods and systems that are unpatentable due to obviousness. J.A. 260, 265. ecobee alleged that all challenged claims would have been obvious as of the priority date of the '268 patent in view of U.S. Patent Application No. 10/628,644 (Ehlers), or in view of Ehlers combined with U.S. Patent Application No. 10/662,940 (Chen). J.A. 265; *see also* J.A. 1168, 2654. The Board, acting for the PTO's Director, instituted the requested review in March 2023. J.A. 544.

Following institution, Causam contended that the Board could not properly consider ecobee's petition because of an ownership issue. ecobee named Causam as the "patent owner" in the caption of its petition, J.A. 256, and explained that the '268 patent had "a recorded assignment" to Causam and that Causam "is the party asserting the patent[]," while noting that "the ownership of the '268 patent, including whether certain other assignments are valid, is in dispute," J.A. 260 & n.1. Causam did not doubt that it was actually the patent owner, or that it had been named and served with copies of the petition, as required by 35 U.S.C. § 312(a)(2) and (a)(5). But it pointed to ecobee's assertion in a pending ITC case that the patent had been assigned to someone else, and it argued that ecobee should be held to have conceded, by virtue of its position in the ITC, that the proper owner was not named and not provided copies of the petition—a posited concession with which Causam disagreed. J.A. 743–45. In the present IPR, neither ecobee nor Causam has asserted that Causam does not own the '268 patent before the Board or in this appeal. On the patentability issue, Causam maintained that Ehlers, or

Ehlers in view of Chen, did not disclose claim limitation [1c]. J.A. 709.

On March 19, 2024, the Board issued its final written decision, holding all challenged claims to be unpatentable under 35 U.S.C. § 103 for obviousness over Ehlers or, in the alternative, over Ehlers in view of Chen. J.A. 1–2, 75–76. The Board additionally found that it could properly consider the IPR petition because Causam asserted ownership of the ’268 patent and ecobee complied with the statutory service requirements by serving Causam, the patent owner of record. J.A. 4–5; *see* 35 U.S.C. § 312(a)(5). The Director denied review on April 11, 2024. *See* J.A. 108. Causam timely appealed on June 12, 2024. ECF No. 1. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

II

We must first address Causam’s constitutional standing to appeal. *Luca McDermott Catena Gift Trust v. Fructuoso-Hobbs SL*, 102 F.4th 1314, 1322–23 (Fed. Cir. 2024). “To demonstrate Article III standing to pursue its appeal, a party invoking the Article III judicial power ‘must have already suffered or be imminently threatened with a concrete, particularized injury, that is fairly traceable to the challenged conduct, and that is likely to be redressed by a favorable court ruling.’” *Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1079 (Fed. Cir. 2025) (quoting *Shenyang Yuanda Aluminum Industry Engineering Co. v. United States*, 918 F.3d 1355, 1364 (Fed. Cir. 2019)); *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 90 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Causam, the party invoking an Article III court’s jurisdiction, bears the burden of establishing standing. *Lujan*, 504 U.S. at 561; *Dolby Laboratories Licensing Corp. v. Unified Patents, LLC*, 138 F.4th 1363, 1366 (Fed. Cir. 2025); *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1171 (Fed. Cir. 2017). The constitutional

requirement must be met in this court even though it did not have to be met before the agency, where Article III does not apply. *See Luca McDermott Catena*, 102 F.4th at 1322; *Shenyang Yuanda*, 918 F.3d at 1365; *Consumer Watchdog v. Wisconsin Alumni Research Foundation*, 753 F.3d 1258, 1261 (Fed. Cir. 2014).

A party invoking Article III jurisdiction must demonstrate its standing "in the same way as any other matter on which [it] bears the burden of proof." *Phigenix*, 845 F.3d at 1172 (internal quotation marks and citation omitted). The constitutional requirement "turns on the facts determined in court, as appropriate to the procedural stage of the decision at issue." *Shenyang Yuanda*, 918 F.3d at 1365; *see Lujan*, 504 U.S. at 561; *Salmon Spawning & Recovery Alliance v. U.S. Customs & Border Protection*, 550 F.3d 1121, 1131 n.9 (Fed. Cir. 2008)). For example, the facts relevant to standing in a district court are identified differently at the pleading, summary-judgment, and judgment-after-trial stages. *See Lujan*, 504 U.S. at 561.

This court, following other circuits, has identified how to proceed when an appeal comes to us from an agency ruling in a proceeding like an IPR—where there may be no findings or even a record of the facts needed to establish Article III standing because Article III does not apply in that proceeding. *See Phigenix*, 845 F.3d at 1170–73; *Shenyang*, 918 F.3d at 1365. Specifically, we have adopted an approach articulated by the D.C. Circuit in *Sierra Club v. Environmental Protection Agency*, 292 F.3d 895, 899 (D.C. Cir. 2002), and followed in other circuits. We have held that the burden of production for an appellant from an administrative adjudication is "the same as that of a plaintiff moving for summary judgment in the district court." *Phigenix*, 845 F.3d at 1172–73 (quoting *Sierra Club*, 292 F.3d at 899); *see National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs*, 981 F.3d 1360, 1368, 1370 (Fed. Cir. 2020) (en banc). That burden requires an appellant to "either identify . . . record evidence

sufficient to support its standing to seek review or, if there is none because standing was not an issue before the agency, submit additional evidence to the court of appeals." *Sierra Club*, 292 F.3d at 899; *see Phigenix*, 845 F.3d at 1172–73. In this case, we need not elaborate on steps in a standing analysis that may come after the production burden is met.

Here, the only issue bearing on Article III standing concerns Causam's ownership of the '268 patent; and if the evidence of Causam's ownership is sufficient under the above-stated standard, Causam has Article III standing to challenge the Board's holding that the claims are unpatentable. The record evidence meets the governing standard. Causam is the assignee of record for the '268 patent. J.A. 79. Causam "unequivocally identifie[d]" itself to the Board as the owner of the '268 patent. J.A. 4. And Causam has insisted in its briefing and in arguments that it owns the '268 patent. *See* Oral Arg. at 2:18–2:28, available at https://www.cafc.uscourts.gov/oral-arguments/24-1958_09032025.mp3. No contrary evidence of record concerning ownership has been presented or pointed out to us. The evidence, if unanswered (as it is), would entitle Causam to a determination on summary judgment that it is the patent owner.[1] Causam thus has standing to appeal the Board's unpatentability ruling, which, if it becomes final, will lead

---

[1] In *Causam v. ITC*, we today hold that the patent-assignment evidence in that matter establishes that Causam owns the '268 patent, contrary to the determination of the ITC's administrative law judge (the Commission took no position on the issue). *Causam v. ITC*, slip op. at 8–14, ––– F.4th at ––– – –––. ecobee was a party before the Commission and is a party in the appeal from the Commission ruling.

to cancellation of all claims of the ’268 patent but claim 12, *see* 35 U.S.C. § 318(b).

III

A

Causam’s first argument on appeal is that the Board committed a constitutional error by not “making any findings on the proper owner of the ’268 patent”—specifically, that the failure to resolve ownership denied someone else (the person that ecobee but not Causam contends is the actual owner) notice of the proceeding, denying that person due process. Opening Br. at 27–28. The right to assert that due process violation, however, does not belong to Causam, but to whoever might be the claimed true owner of the ’268 patent. “[L]itigants typically lack standing to assert the constitutional rights of third parties.” *United States v. Hansen*, 599 U.S. 762, 769 (2023); *see also Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (“[A] party ‘generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.’” (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))). In limited circumstances where certain close relationships exist between the litigant and the right-holder that align their interests, the former is permitted to assert the rights of the latter. *Kowalski*, 543 U.S. at 129–30. But those circumstances do not exist here. Causam, far from being aligned with the person whose right to notice was assertedly violated, is actually adversarial to that person: Causam claims that it, not anyone else, is the sole owner of the patent.

In addition, Causam never squarely asked the Board to determine the identity of the true owner of the patent. Rather, it merely contested institution of the IPR on the theory that ecobee should be taken to have conceded (incorrectly, in Causam’s view) that someone other than Causam was the true owner, a concession that, if accepted, would mean that the requirements of 35 U.S.C. § 312 were

not met. *See* J.A. 743. That position did not call on the Board actually to decide ownership at all.[2]

B

On the patentability merits, Causam argues that the Board improperly construed claim limitation [1c]—"generating measurement and verification data corresponding to the reduction in consumed power"—when it concluded that the limitation "encompasses both actual measurements of savings and estimates of savings based on device power usage measured *before* a demand reduction event." J.A. 27 (emphasis added). Causam argues that the limitation, properly construed, requires that the generation of measurement and verification data occur *during* the demand

[2] In this court, Causam presents, regarding ownership, only a constitutional argument, seeking to avoid the bar on review of institution decisions stated in 35 U.S.C. § 314(d). *See Cuozzo Speed Technologies v. Commerce for Intellectual Property*, 579 U.S. 261, 266 (2016) (noting that case did not present a constitutional challenge); *Apple Inc. v. Vidal*, 63 F.4th 1, 7 (Fed. Cir. 2023) (same). The third-party-standing rule discussed in text above might well defeat any attempt by Causam to make a purely statutory argument that 35 U.S.C. § 312 requires naming and serving a person the petitioner *believes* (incorrectly in Causam's view) to be the patent owner—rather than a person who actually is the patent owner. And such an argument based on an interpretation of section 312 would also present a serious issue of unreviewability under section 314(d). *See Cuozzo*, 579 U.S. at 274–75 (holding a challenge invoking section 312 unreviewable); *Thryv, Inc. v. Click-To-Call Technologies, LP*, 590 U.S. 45 (2020) (holding a challenge invoking section 315 unreviewable); *ESIP Series 2, LLC v. Puzhen Life USA, LLC*, 958 F.3d 1378, 1385–86 (Fed. Cir. 2020) (holding a challenge invoking section 312's requirement to name real parties in interest unreviewable).

response event. Opening Br. at 34; *see* J.A. 26. Causam's contention that the Board erred regarding the prior art depends on Causam's claim-construction challenge. *See* Opening Br. at 39–43. We reject that challenge.

"We review the Board's legal determinations de novo and the Board's factual findings for substantial-evidence support." *Yita LLC v. MacNeil IP LLC*, 69 F.4th 1356, 1363 (Fed. Cir. 2023). "Claim construction is ultimately a question of law, decided de novo on review, as are the intrinsic-evidence aspects of a claim-construction analysis." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 808 (Fed. Cir. 2021). While there is "'no magic formula . . . for conducting claim construction,'" the "[c]laim language and the specification (written description) are the dominant sources of interpretation[.]" *Id.* at 809 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005) (en banc)).

The language of limitation [1c] does not support Causam's narrow construction. The claim itself simply does not provide any indication that the "measurement and verification" component is temporally restricted to being performed during a demand response event. In particular, as the Board concluded, the requirement that measurement and verification data "correspond[] to the reduction in consumed power" does not constrain such measurement to any specified time. J.A. 26.

Causam's proposed construction also would produce the disfavored result of "exclud[ing] embodiments disclosed in the specification." *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1058 (Fed. Cir. 2024) (internal quotation marks and citation omitted). For example, in a passage the Board identified in its final written decision, the specification describes a power management system as follows:

> The power management system determines the amount of steady-state power each device consumes when turned on and logs the information in a database for each subscriber. For example, a

> current sensor on each smart appliance or within each smart breaker may **measure the amount of current consumed** by each monitored device. An active load client then **multiplies the amount of current consumed by the operating voltage of the device to obtain the power consumption**, and transmits the power consumption to the [active load director] server. **When the serving utility needs more power than it is currently able to supply**, the power load management system **automatically adjusts** the power distribution by **turning off specific loads** on an individual subscriber basis. **Because the amount of power consumed by each specific load is known**, the system can determine precisely which loads to turn off and tracks the power savings generated by each customer as a result of this short-term outage.

’268 patent, col. 7, lines 11–27 (emphases added). In that embodiment, the power management system makes power-saving adjustments during periods of high consumption based on “known” power-consumption loads. *Id.*, col. 7, line 24. The “known” power-consumption loads are estimates, obtained by measuring currents and multiplying them by the operating voltages of the devices. *Id.*, col. 7, lines 14–19. The embodiment uses measurements known *before* any demand response event occurs. *Id.*, col. 7, lines 23–27. That embodiment undermines the proposal to restrict limitation [1c] to exclude the use of estimated measurements taken before a demand response event.

The description of another embodiment of the ’268 patent points in the same direction. Specifically, the patent describes using an average measurement of power consumption instead of a measurement of power consumption during the demand response event (referred to as a “Cut” event). The specification describes how a

> power savings application [ ] receives [ ] an "Event Ended" or equivalent transaction message . . . each time a "Cut" or power savings event has ended. The power savings application [ ] **then** accesses [ ] the . . . database [ ] for each active load client [ ] involved in the "Cut" event. The database record for each active load client [ ] contains the **actual amount (or average amount) of power that would have been used** by the active load client [ ] during the last "Cut" event, along with the amount of time that each controllable device [ ] associated with the active load client [ ] was turned off.

'268 patent, col. 21, lines 42–53. (emphases added). This embodiment does not require a measurement *during* a demand response event. Instead, in this embodiment, a measurement is taken *after* the power savings event is over by accessing a database to find an actual *or average* power consumption that would have been used during the demand response. *Id.*, col. 21, lines 46–51. We see no reason to adopt a temporal limit on the generation of measurement and verification data given this disclosure.

Based on the language of the claim and the disclosures within the '268 patent, we see no error in the Board's construction of limitation [1c]. The Board's determination of obviousness thus rests on a sound construction of claim 1. And Causam makes no meaningful challenge to the obviousness determination independent of its claim-construction challenge.

## IV

The decision of the Board is affirmed.

The parties shall bear their own costs.

**AFFIRMED**